UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON

SEP. 1 1 2013

PER _____
DEPUTY CLERK

RHONSHAWN JACKSON,           :

    Plaintiff           :

    v.           : CIVIL NO. 3:CV-11-1431

               :
JEFFREY A. BEARD, et al.,           : (Judge Kosik)

    Defendants           :

## MEMORANDUM

Rhonshawn Jackson ("Jackson"), an inmate currently confined at the State

Correctional Institution at Albion, Pennsylvania, filed this civil rights action pursuant

to 42 U.S.C. § 1983. The matter proceeds on an amended complaint served upon the

Defendants on July 30, 2012. (Doc. 19.) Named as Defendants are the Pennsylvania

Department of Corrections ("DOC"), DOC officials, and employees at the State

Correctional Institutions at Camp Hill and Huntingdon, Pennsylvania. In the

complaint, Jackson sets forth allegations claiming that Defendants engaged in a

campaign of retaliation and harassment against him for "starting a riot." His

allegations include the destruction of personal and legal property, verbal abuse,

physical assaults, the denial of medical treatment and cruel and unusual living

conditions. Plaintiff further alleges that he was placed in punitive confinement for

filing grievances and litigating claims, and that he was denied due process with respect to the processing of his grievances. Presently before the court for consideration is a motion to dismiss, for more definite statement and for summary judgment filed by the Corrections Defendants (Doc. 40), and a motion to dismiss or in the alternative for judgment on the pleadings filed by Defendants Reis and Lane (Doc. 48).

## I.    Allegations in the Complaint

Jackson's amended complaint is twenty-seven (27) pages in length and contains over ninety-six (96) paragraphs. He names a total of twenty-seven (27) defendants including DOC officials and employees of SCI-Huntingdon and SCI-Camp Hill. The allegations are divided into the following three categories: SCI-Huntingdon violations; SCI-Camp Hill violations; and Supervisory Defendants. (Doc. 19, Am. Compl.) For the sake of clarity, the court will summarize the allegations in the same fashion.

### A.    SCI-Huntingdon violations

On March 19, 2009, Plaintiff was involved in an assault on several guards at SCI-Houtzdale that incited a riot in the cafeteria. This incident resulted in negative attention to Plaintiff in the media and from DOC employees. As a result, Plaintiff contends that SCI-Houtzdale employees conspired to engage in a campaign of retaliatory acts against him. From March 20, 2009 through September 29, 2010,

Defendants Cate, Semple, Williams, Pyle, Spellman, Long, McCloskey, McCoy, Donaldson, Clark and Shroyer orchestrated and issued false disciplinary charges in furtherance of the retaliation scheme. They also denied Plaintiff showers, meals and one (1) hour of recreation each day.

Defendant Green assigned a grievance filed by Plaintiff against Defendant McCoy to McCoy for review in an effort to foster the retaliation. According to Plaintiff, this act resulted in more retaliation including his placement in solitary confinement. Defendants Cates, Stevens, Lawler, Eckard, Spellman and Donaldson also defamed Plaintiff's character by writing "snitch," "die nigger" and other remarks on his legal materials, and then promoting these falsities to dangerous inmates who, in turn, threatened and assaulted Plaintiff as a result thereof.

On an unspecified date, Defendants Shroyer and Clark made homosexual advances to Plaintiff and told him he would get his dinner tray if he complied. Plaintiff grieved this issue and was retaliated against for doing so. It is also alleged that Defendant Clark denied Plaintiff meals and necessities, and made verbal threats. Defendants Wakefield, Lawler and Eckard failed to provide any relief in response to Plaintiff's complaints. It is further alleged that Defendants Cates, Semple, Williams, Pyle, Spellman, Long, Clark, McCloskey and McCoy knew that Plaintiff was taking psychotropic medication and needed to eat, yet denied him meals.

Plaintiff claims that Defendant Lane was part of the conspiracy to retaliate

against him because Lane knew that the medications prescribed by Defendant Reis were on the FDA "Black Box List" due to their increased risk of causing suicidal thoughts and propensity to worsen depression. It is also alleged that Lane neglected Plaintiff's deteriorated state of health including weight loss, upset stomach, sweating and other conditions.

The amended complaint further alleges that Defendants McCoy, Spellman, Clark, Long, Donaldson, Stroyer, Semple and Cates obstructed the filing of grievances by Plaintiff by ripping them up and throwing them away. Plaintiff also contends that he was denied breakfast and yard because he would not tell his family and the Human Rights Coalition ("HRC") to stop calling the prison with respect to Plaintiff's complaints.

The foregoing abuse continued from June 16, 2009 through June 27, 2010. Plaintiff does not provide the name of any specific Defendants with respect to this allegation other than to claim that he was beaten and tasered on June 26, 2010 because he spoke out against Defendant Pyle. He contends that Defendant Clark and other members of the extraction team informed him that the assault was "compliments of the Superintendent." Following the beating, Plaintiff was placed in a dirty cell with no socks, shoes, underwear, clothes or toiletries. He was also verbally taunted by Clark.

Plaintiff claims that from the date of the assault until the time of his transfer to

SCI-Camp Hill, Defendants Williams, Long, McCoy and Spellman retaliated against him through assaults, as well as the deprivation of food, yard and showers.

On September 29, 2010, Plaintiff states that he and other inmates were doused with O.C. spray, beaten and denied medical treatment following a peaceful protest in the yard. He does not specify if any of the named Defendants were involved in this incident. He further claims that prior to this incident, he was denied a religious meal during the 3 day feast of Ramadan, and that he was subjected to verbal abuse. Grievances he attempted to file with regard to these matters were obstructed.

On October 24, 2010, Defendants Williams, Semple and Spellman left a noose in Plaintiff's cell following a security check. Plaintiff states he discovered the noose when he re-entered the cell. On November 2, 2010, he was denied breakfast and lunch for the fourth day in a row. On December 1, 2010, Defendants Long, Donaldson, Pyle and McCoy took Plaintiff to an observation cell where there were no cameras. McCoy confiscated all of Plaintiff's legal and personal items without justification for doing so. On December 6, 2010, the legal materials were returned, but were defaced with racial slurs.

Plaintiff claims that Defendant Dunkle extracted him from the recreation yard in October of 2010 using "loads of O.C. spray" and made him strip down in the freezing temperature. This conduct occurred because Plaintiff asked to speak with prison officials about the abuse taking place. A grievance filed with respect to this

matter was allegedly obstructed and denied.

Plaintiff generally alleges that when false disciplinary reports were issued against him for the purpose of prolonging his solitary confinement and exacerbating his mental illness, Defendants denied him due process by not allowing his appeals to go forward, not allowing witnesses, and destroying his grievances. He claims these tactics were all part of the retaliation campaign against him. He contends that Defendants Lawler, Eckard, Wakefield, McCoy and Dunkle did nothing to intervene.

It is also alleged that Defendants Lane and Reis were deliberately indifferent (1) every time they denied him adequate medical/mental health care in order to minimize costs and (2) kept him on Celexa and Remerom, the two drugs on the FDA Black Box List. He claims that Reis, Lane, Wakefield and Lawler all had firsthand knowledge of his mental health condition and suicidal risk, yet failed to place him in a rehabilitation unit.

Plaintiff claims that as a result of the news attention he received from reporting the foregoing abuses, Defendants McCoy, McCloskey, Cates, Long and Donaldson conspired to fabricate documents to show that Plaintiff refused showers and recreational time. He claims he was left naked for seven (7) days without personal property, mail and a mattress. This action was taken pursuant to the orders of Defendants Lawler and Eckard. Requests submitted by Plaintiff to be separated from Defendants were denied by Defendants Green, Lawler and Eckard.

B.    <u>SCI-Camp Hill violations</u>

On January 25, 2011, Plaintiff states he was illegally transferred to the Special Management Unit at SCI-Camp Hill. He claims that the transfer occurred without a mental health evaluation or any opportunity to challenge the transfer. The following month, Plaintiff told unidentified block officers that he needed his legal materials due to pending litigation against SCI-Huntingdon. His request was denied.

On May 18, 2011, Plaintiff received a letter from this court that was ripped open outside of his presence. He appears to blame Defendant Heist, the Mailroom Supervisor at SCI-Camp Hill, for this conduct. A grievance was filed regarding this issue and Plaintiff maintains that Heist retaliated against him for filing the grievance by writing a false misconduct against him for refusing to obey an order and for attempting to run a business through the prison mail (Misconduct #B33221B). Plaintiff states that he won the misconduct, but received a 15 day yard restriction due to Heist's retaliatory actions.

On June 14, 2011, Heist denied Plaintiff a book he received in the mail claiming that it was missing an invoice/receipt. Because the label on the package revealed where the book came from, Plaintiff argues that the denial was purely retaliatory on Heist's part. A grievance filed with respect to this issue was unsuccessful. According to Plaintiff, Defendant Gimble handled several grievances he submitted with respect to Heist's conduct and denied each one because he

conspired with Heist with respect to the retaliation. Grievances filed with respect to this conduct were obstructed.

On July 19, 2011, Heist issued a bogus misconduct charging Plaintiff with sexual harassment and the use of abusive language. Plaintiff successfully challenged the misconduct, but states he was given 30 days of yard restriction.

### C. Supervisory Defendants

The last section of the amended complaint alleges that Defendants Beard, Smeal, Lawler, Eckard, Murray, Ditty, and Southers failed to establish policies for SCI-Huntingdon and SCI-Camp Hill including the training of personnel with respect to mentally ill prisoners in the Restricted Housing Unit, and providing adequate psychiatric care to mentally ill inmates. He further maintains that there existed policies of not providing adequate medical treatment, showers, food and exercise to RHU/mentally ill inmates and that Defendants did not make sure such inmates were not harassed by the staff. He claims that these supervisory officials had the responsibility for the actions of the correctional officers employed at their facility.

## II. Motion to Dismiss filed by Defendants Lane and Reis

### A. Standard

Defendants move to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis of failure to state a claim upon which relief can be granted. When ruling on a motion to dismiss under Rule 12(b)(6), the court

must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the ... claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1947, 173 L. Ed. 2d 868 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. at 1950, 173 L. Ed. 2d 868 (citing Twombly, 550 U.S. at 555 (requiring

plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. 662, 129 S. Ct. at 1949, 173 L. Ed. 2d 868. When the complaint fails to present a prima facie case of liability, however, courts should generally grant leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). Defendants first move to dismiss the amended complaint on the basis of Plaintiff's failure to exhaust administrative remedies. For the reasons that follow, the motion will be granted.

B.    Analysis

Defendants maintain that Plaintiff has procedurally defaulted on the claims raised against them by failing to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a). This section provides as follows:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Pursuant to 42 U.S.C. § 1997e(a), the exhaustion of available administrative remedies is mandatory. Booth v. Churner, 532 U.S. 731, 739 (2001). The "exhaustion requirement applies to all inmate suits about prison life, whether they

involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. Nyhuis v. Reno, 204 F.3d 65, 75 (3d Cir. 2000). "[I]t is beyond the power of [any] court ... to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Id. at 73, citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis, 204 F.3d at 71. Thus, prisoners are required to exhaust available administrative remedies prior to seeking relief pursuant to 42 U.S.C. § 1983 or any other federal law. Jones v. Bock, 127 S. Ct. 910, 918-19 (2007). Nevertheless, "failure to exhaust is an affirmative defense that must be pled and proven by the defendant." Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) (citing Ray v. Kertes, 285 F.2d 287, 295 (3d Cir. 2002)).

The PLRA mandates that a prisoner "properly" exhaust his or her administrative remedies before commencing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2387 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386. Such requirements "eliminate unwarranted

federal-court interference with the administration of prisons, and thus seek [ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Id. at 2387 (quoting Porter, 534 U.S. at 525.) Failure to comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004)("[P]rison grievance procedures supply the yardstick for measuring procedural default."). Procedural default is a question of law. Id. at 232.

The Pennsylvania Department of Corrections has a three-tiered inmate grievance procedure, which is set forth in Administrative Directive 804. (Doc. 49, Ex. B.) Under the DOC's inmate grievance procedure, an inmate must submit an initial grievance to the prison's Grievance Coordinator within fifteen (15) days of the incident in question. The Grievance Coordinator then assigns the grievance to the appropriate prison official or employee for a response. Following the Grievance Officer's decision, the inmate then has fifteen (15) working days to appeal to the Superintendent of the prison. Once the Superintendent's decision is made, the inmate has fifteen (15) working days to file a final appeal with the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). A grievance which is rejected or an appeal which is dismissed is different from a grievance or appeal which is denied. A rejected grievance or dismissed appeal does not lead to a finding on the merits of the

12

issue by the DOC officer to whom it is addressed.

In the instant case, Defendants state that based upon the foregoing, any grievance which is properly exhausted must have gone through the SOIGA. In reviewing all of the grievances filed by Plaintiff, none of the grievances appealed to said office have referenced Defendants Reis or Lane, or raise any issue regarding Plaintiff's alleged mental illness or any disagreement with his treatment. (Doc. 49, Ex. A, SOIGA Grievance appeals.)

In reviewing these materials, it is clear that the SOIGA file contains no grievances which address claims raised against Reis and Lane in the amended complaint. In opposing Defendants' motion, Plaintiff argues that in his amended complaint, he alleges that his grievances, grievance appeals and misconduct appeals were obstructed by the Defendants in this action. (Doc. 50 at 2.) However, in reviewing the amended complaint, Plaintiff never claims that he was obstructed with respect to any of the grievances filed against Defendants Reis and/or Lane. He sets forth specific allegations of obstruction only with respect to certain grievances, and such grievances were filed against other Defendants in this action, and not Defendants Reis and/or Lane. For these reasons, the instant motion to dismiss will be granted and the claims set forth against Defendants Reis and Lane dismissed for failure to exhaust administrative remedies.

13

## III. DOC Defendants' Motion to Dismiss, For a More Definite Statement and for Summary Judgment

### A. Standard

The Corrections Defendants have filed a motion to dismiss, for a more definite statement and for summary judgment with respect to the claims raised against them in the amended complaint. In filing their brief in support of the motion, Defendants state that a "motion for summary judgment, supporting brief, statement of material facts and appendix with exhibits will be filed in the near future on the issue of exhaustion." To date, no such documents have been filed. As such, the pending motion will be construed as one exclusively seeking to dismiss or for a more definite statement with respect to the claims designated by Defendants.

The standard utilized in considering a motion to dismiss is set forth above and will not be repeated herein. Pursuant to Fed. R. Civ. P. 12(e), a party may move for a more definite statement of a pleading where a responsive pleading is allowed, but where the pleading is so vague or ambiguous that the party cannot reasonably prepare a response. See S.E.C. v. Saltzman, 127 F.Supp.2d 660, 667 (E.D. Pa. 2000).

"Because Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim, motions for a more definite statement are 'highly disfavored'." Country Classics at Morgan Hill Homeowners' Ass'n v. Country Classics at Morgan Hill, LLC, 780 F.Supp.2d 367, 371 (E.D. Pa. 2011)(quoting Hughes v. Smith, 2005 WL 435226, *4 (E.D. Pa. 2005)). A motion for more definite statement is "used to

14

provide a remedy for an unintelligible pleading rather than as a correction for a lack of detail." Premier Payments Online, Inc. v. Payment Sys. Worlwide, 848 F.Supp.2d 513, 522 (E.D. Pa. 2012)(quoting Frazier v. SEPTA, 868 F.Supp. 757, 763 (E.D. Pa. 1994), and citing Country Classics, 780 F.Supp.2d at 371).

B.    Discussion

Defendants state at the onset that they are moving to dismiss all paragraphs of the complaint with the exception of 52, 53, 55 and 58. As such, these claims will proceed in this action.[1] They move to either dismiss or for a more definite statement with respect to the remaining claims. The Court will now address the remaining claims.

1.    Claims against Defendants in their Official Capacities

Without unnecessary elaboration, the § 1983 claims set forth against the DOC Defendants in their official capacities are barred by the Eleventh Amendment and will be dismissed. See Melo v. Hafer, 912 F.2d 628 (3d Cir. 1990). In addition, state officials sued in their official capacity are not "persons" within the meaning of a § 1983 claim. Evancho v. Fisher, 423 F.3d 347 (3d Cir. 2005). As such, the federal claims against the DOC Defendants in their official capacity are subject to dismissal. Mitchell v. Department of Corrections, 272 F. Supp.2d 464 (M.D. Pa. 2003).

---

[1] The court will also allow the claim set forth in ¶ 63 of the amended complaint against Defendant Dunkle to proceed as Defendants do not appear to address this claim in their motion.

2. Claims occurring prior to August 3, 2009 (¶¶ 38, 40, 41, 51)

Civil rights claims are subject to the statute of limitations for personal injury actions of the pertinent state. Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). Thus, Pennsylvania's two year statutory period applies to the instant claims. See Lake v. Arnold, 232 F.3d 360, 368 (3d Cir. 2000); 42 Pa.C.S. § 5524. The limitations period begins when the plaintiff knows or had reason to know of the injury forming the basis for the federal civil rights action. Gera v. Commonwealth of Pennsylvania, 256 F. App'x 563, 564-65 (3d Cir. 2007).

The original complaint was filed in this action on August 4, 2011. While Defendants move to dismiss some of the paragraphs in the amended complaint as barred by the applicable statute of limitations, the Court is unable to make such a determination on the record as it stands. However, even assuming said claims were not barred, they are subject to dismissal as will be discussed in this Memorandum.

3. Verbal harassment

It is well established that mere words spoken to a prisoner by a correctional officer, even when those words are harsh, do not amount to a violation of the prisoner's civil rights by the officer. Johnson v. Glick, 481 F.2d 1028, 1033 n. 7 (2d Cir. 1973); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)(verbal harassment by threatening to hang an inmate is not sufficient to state a constitutional deprivation). "Standing alone, simple verbal harassment does not constitute cruel and unusual

punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000). However, verbal threats with some reinforcing act accompanying them may state a constitutional claim. A viable claim has been found if some action taken by the defendant escalated the threat beyond mere words. Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992)(guard put a revolver to the inmate's head and threatened to shoot).

In this action, Defendants move to dismiss ¶¶ 43-45 and 57 as mere verbal harassment and therefore not cognizable claims. The court does not construe ¶ 43 to be a verbal harassment allegation, but rather as a failure-to-protect claim under the Eighth Amendment claim. In this paragraph, Plaintiff alleges that Defendant Cates, Stevens, Lawler, Eckard, Spellman and Donaldson defamed his character by writing "snitch," "die nigger" and other remarks on his legal materials and then promoted these falsities to dangerous inmates who thereafter assaulted him. Accepting this as true, the claim will at least be allowed to proceed at this juncture. The Court does agree that the remaining paragraphs (¶¶ 44, 45 and 57) amount to nothing more that harassment. Accordingly, they will be dismissed from this action.

4. Confiscation of property claims

To the extent that Plaintiff alleges in paragraphs 60, 82 and 83 of the amended complaint that various personal property belonging to him was confiscated and/or

destroyed by Defendants, these claims are subject to dismissal. A civil rights claim cannot be brought to vindicate a prisoner's right to property when the deprivation occurs as a result of a tortious and unauthorized act and where an adequate remedy exists to compensate those who have suffered tortious loss at the hands of the state. Parratt v. Taylor, 451 U.S. 527, 543-44 (1981). The United States Supreme Court has extended Parratt to include intentional deprivations of property, holding that where a prisoner has an adequate post-deprivation remedy under state law for any loss suffered to his property, a civil rights claim is not available. Hudson v. Palmer, 468 U.S. 517, 532-33 (1984). In the instant action, Plaintiff had adequate post-deprivation remedies available in the form of a state court action. As such, these claims will be dismissed.

5. Search and Seizure

To the extent Plaintiff seeks relief regarding any search of his cell as violating the Fourth Amendment, his claim fails. The Fourth Amendment does not apply to a prison cell and this claim will be dismissed. See Ball v. Oden, 425 F. App'x 88 (3d Cir. 2011).

6. Access to the courts claims

Defendants move to dismiss the access to the courts claims set forth by Plaintiff in ¶¶ 60 and 76 of the amended complaint. It is well established that an inmate has a constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 349-56

(1996). However, the Supreme Court in <u>Lewis</u> emphasized that a plaintiff alleging the denial of access to the courts must show "actual injury" such as dismissal of a suit or inability to file a complaint as a result of the purported unlawful acts in order to proceed with his suit. <u>Lewis</u>, 518 U.S. at 349-57. In ¶ 60, Plaintiff merely alleges that legal materials were taken and there is no suggestion whatsoever that any injury was suffered. In ¶ 76, while Plaintiff claims legal materials taken in February of 2011 were needed due to a "pending litigation 1983 vs. SCI-Houtzdale," again there is no suggestion that any actual injury was suffered due to the deprivation of said legal materials on this occasion. As such, these claims are subject to dismissal.

7. Due Process challenges to the grievance procedure/processing of grievances

The allegations set forth in ¶ 87 against Defendant Gimble will be dismissed on the following basis. It is well established that there is no constitutional right to a grievance procedure. <u>See</u> <u>Jones v. North Carolina Prisoners' Labor Union, Inc.</u>, 433 U.S. 119, 137-38 (1977). Even if a prison provides for a grievance procedure, as the DOC does, violations of such procedures do not amount to a civil rights cause of action. <u>Hoover v. Watson</u>, 886 F. Supp. 410, 418 (D. Del. 1995), <u>aff'd</u>, 74 F.3d 1226 (3d Cir. 1995). Further, a supervisory defendant's involvement that he responded unfavorably to an inmate's later-filed grievance does not state a claim under § 1983. <u>See</u> <u>Atwell v. Lavan</u>, 557 F. Supp.2d 532, 547 (M.D. Pa. 2008); <u>Wilson v. Horn</u>, 971 F. Supp. 943, 947 (E.D. Pa. 1997). While Defendant seeks to dismiss the claims set

forth in ¶ 65 on this basis, the court reads this claim more broadly and it will not be dismissed at this juncture.

8. Inadequate medical/mental health care claims

To the extent Plaintiff sets forth inadequate medical/mental health care claims against DOC Defendants Wakefield and Lawler, these claims are subject to dismissal for the following reasons. A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 828-29 (1994). To establish that prison officials violated the Eighth Amendment by failing to prevent harm, an inmate must satisfy a two-pronged test that includes an objective and subjective element. Farmer, 511 U.S. at 828-29. An inmate must show (1) that the prison conditions posed a substantial risk of serious harm and (2) that prison officials were deliberately indifferent to the inmate's safety. Id. at 834. Prison officials exhibit deliberate indifference when they know of and disregard an excessive risk to inmate safety; mere negligence will not suffice. Id. at 835-37. To constitute deliberate indifference as defined in Farmer, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. However, an official who knows of a substantial risk to an inmate's health or safety but acts reasonably under the circumstances will not be held liable under the Eighth Amendment, even if the threatened harm results. Id. at 843.

It is well established that for non-medical defendants, to fulfill the deliberate indifference element, Plaintiff must show that the non-medical prison official had reason to believe or actually knew that prison doctors or their assistants were mistreating or not treating Plaintiff. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004); Durmer, 991 F.2d at 69. "If a prisoner is under the care of medical experts . . ., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands . . . . [A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill, 372 F.3d at 236.

In the instant case, Plaintiff sets forth allegations establishing that he was under the care of Defendants Reis and Lane for his mental condition. He does not set forth allegations demonstrating that Wakefield and/or Lawler, both non-medical Defendants, had any reason to believe that he was not receiving proper mental health. As such, the claims against them will be dismissed.

9.    Claims against Supervisory Defendants

Plaintiff sets forth claims in ¶¶ 91-96 against certain Defendants on the basis of their supervisory positions within the Pennsylvania Department of Corrections (Defendants Beard, Smeal, Lawler, Eckard, Murray, Ditty and Southers). It is well-established that to state a claim under § 1983, the complaint must contain allegations

that the defendant participated in or had actual knowledge of or acquiesced in actions proscribed by federal law which serve as the basis of the complaint. <u>Rode v. Dellarciprete</u>, 845 F.2d 1195,1207 (3d Cir. 1988). Liability cannot be premised on the theory of <u>respondeat superior</u>. <u>See</u> <u>Parratt v. Taylor</u>, 451 U.S. 527, 537 n.3 (1981). Allegations of personal involvement must be made with particularity. <u>Rode</u>, 845 F.2d at 1207. A supervisory defendant may be liable only if he directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. <u>Rode</u>, 845 F.2d at 1207-08. Plaintiff's general allegations against these supervisory Defendants of failing to establish policies with respect to virtually every issue he raises in the complaint is insufficient to state a claim for relief with respect to said Defendants.

10.    Mail interference

Plaintiff sets forth a claim of mail interference with respect to Defendant Heist. While he claims his mail was opened on one occasion (Doc. 1 at ¶ 77), he does not claim that it was Heist who opened the mail. As Mailroom Supervisor at SCI-Camp Hill, Heist cannot be held accountable merely because of his supervisory position. See Rode, 845 F.2d at 1207-08. Moreover, Plaintiff only asserts one occasion of mail interference. This claim is subject to dismissal in that a single, isolated incident of interference with mail does not set forth a constitutional violation. <u>See</u> <u>Bieregu v. Reno</u>, 59 F.3d 1445, 1451-52 (3d Cir. 1995)(isolated incidents of interference with, or short delays in the delivery of, a prisoner's mail do not violate the constitution).

11. Retaliation

Plaintiff appears to set forth numerous claims of retaliation. (See Doc. 19 at ¶¶ 41, 42, 51, 54, 59, 67, 85, 86, 88 and 90.) He contends that adverse actions in the form of basically every allegation he sets forth in his epic length complaint are done to him in response to his admitted assault of a corrections officer at SCI-Houtzdale. To prevail on a retaliation claim under 42 U.S.C. § 1983, a plaintiff-prisoner must show that: (i) he or she engaged in constitutionally protected conduct; (ii) an adverse action was taken by prison officials "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (iii) there was a causal relationship between the foregoing two (2) elements. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). Assaulting a prison officer is not constitutionally protected conduct. Any claim for retaliation based upon such (¶¶ 41, 42, 51, 54, 59, 67, 85, 86, 88 and 90) therefore fails to state a claim.

12. Issuance of false misconducts

At two points in his amended complaint, Plaintiff alleges that he was issued retaliatory false misconduct charges which "he beat." (Doc. 19, ¶¶ 79-81 and 90.) However, Plaintiff then admits that he received sanctions with respect to each of these misconducts. The finding of guilt on the misconducts undermines any claim Plaintiff asserts that the misconducts were retaliatory. See Nifas v. Beard, 374 F. App'x 241

(3d Cir. 2010). As such, these claims will be dismissed.

13. Transfer from SCI-Huntingdon to SCI-Camp Hill SMU

Plaintiff generally challenges his transfer to the SMU at SCI-Camp Hill (Doc. 19, ¶ 72). To the extent Plaintiff contends that the transfer was in retaliation for his admission to having assaulted an officer, any such retaliation claim has been dismissed. However, the court will address his challenge to the transfer as a violation of due process.

Plaintiff has no justifiable expectation that he will be housed at any particular prison. Olim v. Wakinekona, 461 U.S. 238, 245 (1983). As an inmate, he also has no liberty interest under the Due Process Clause to be classified in the general population of a prison. Sheehan v. Beyer, 51 F.3d 1170, 1175 (3d Cir. 1995). Moreover, prison conditions do not impact a protected liberty interest unless the prison's action imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). In the instant case, Plaintiff merely challenges the transfer itself, and not the conditions of the SMU at SCI-Camp Hill. As such, this claim will be dismissed.

14. Insufficient claims

Defendants allege that the remaining claims set forth in the amended complaint should be dismissed for insufficiency because they still fail to provide them with the required information necessary to formulate a response to the allegations. These

allegations consist of general claims of the denial of meals, showers and recreation without a specific date and Defendant involved, allegations of false misconducts and obstruction of grievances without any Defendants named and additional similar claims. Many of these claims have already been addressed and dismissed on another basis. However, to the extent any such claims remain, Plaintiff has already been provided with an opportunity to file an amended complaint to cure such deficiencies and has failed to do so. Accordingly, these claims will be dismissed on this basis. An appropriate order follows.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

RHONSHAWN JACKSON,        :
           :
    Plaintiff        :
           :
   v.          :   CIVIL NO. 3:CV-11-1431
           :
JEFFREY BEARD, et al.,      :   (Judge Kosik)
           :
    Defendants     :

## ORDER

**NOW, THIS**   *11th*   **DAY OF SEPTEMBER, 2013,** in accordance with

the accompanying Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. The motion to dismiss filed by Defendants Lane and Reis (Doc. 48) is **granted**. All claims set forth against Lane and Reis are dismissed in their entirety on the basis of failure to exhaust administrative remedies.

2. The motion to dismiss, for more definite statement and for summary judgment filed by the Corrections Defendants (Doc. 40), which will be construed to be a motion to dismiss and for more definite statement, is **granted in part and denied in part** as fully set forth in the accompanying Memorandum.

3. The following claims are the only claims that remain in this action:

   a. The claims which Defendants did not move to dismiss that are asserted in ¶¶ 52, 53, 55, 58 and 63;
   b. The 6/26/10 claim of excessive force and placement in dirty cell;
   c. The 9/29/10 claim of being doused with O.C. spray, beaten and denied medical attention following a peaceful yard protest;

    d.  The 11/2/10 claim of being denied food for four (4) straight days;

    e.  The Eighth Amendment failure-to-protect claim against Defendants Cates, Stevens, Lawler, Eckard, Spellman and Donaldson;

    f.  The denial of due process claim alleged in ¶ 65.

4.    Within twenty (20) days from the date of this order, Defendants shall file their answer to the claims remaining in this action.


EDWIN M. KOSIK
United States District Judge