UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RHONSHAWN JACKSON, : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No. 3:11-CV-1431 |
| v. : | |
| : | |
| JEFFREY BEARD, *et al.*, : | (Judge Kosik) |
| : | |
| Defendants. : | |

**MEMORANDUM**

Before the court are Plaintiff's objections to a Report and Recommendation ("R&R") issued by United States Magistrate Judge Martin C. Carlson. For the reasons which follow, we will adopt the R&R.

**I. BACKGROUND**

Plaintiff, Rhonshawn Jackson ("Jackson"), is an inmate currently incarcerated within the Pennsylvania Department of Corrections ("DOC") at the State Correctional Institution ("SCI") at Albion. Jackson filed this action pursuant to 42 U.S.C. § 1983 on August 4, 2011 (Doc. 1), and subsequently filed an amended complaint on June 15, 2012. (Doc. 19). On September 12, 2013, we issued a memorandum and order, dismissing Defendants Reis and Lane. (Doc. 55). Nineteen Defendants remain in this action: Beard, Smeal, Lawler, Eckard, Green, Wakefield, Stevens, Cates, Semple, Williams, Pyle, Spellman, Long, McClosky, McCoy, Donaldson, Clark, Shroyer, and Dunkle.

Defendants subsequently filed a Motion for Summary Judgment (Doc. 86), a brief in

1

support (Doc. 87), and a Statement of Material Facts ("SMF") (Doc. 88), on July 28, 2015. Plaintiff filed a brief in opposition to Defendants' Summary Judgment Motion (Doc. 95) and a Statement of Disputed Facts (Doc. 96), on August 14, 2015. On August 28, 2015, Defendants filed a reply brief. (Doc. 98).

The Motion for Summary Judgment was fully briefed and ripe for disposition. Magistrate Judge Martin C. Carlson issued a R&R on March 31, 2016, recommending the Court grant, in part, and deny, in part, Defendants' Motion for Summary Judgment. (Doc. 102). On April 11, 2016, Plaintiff filed Objections to the R&R (Doc. 103), setting forth four discernable objections. Defendants filed a brief in support to the Magistrate Judge's R&R (Doc. 104).

## II. STATEMENT OF FACTS

The Magistrate Judge was called upon to consider the six remaining claims in this case, arising out of Jackson's confinement at the Restricted Housing Unit ("RHU") at SCI-Huntington from March 20, 2009 through January 2011. The first three claims advanced by Plaintiff alleged excessive force by Defendants, followed by Eighth Amendment claims relating to the conditions of confinement and failure to protect. Jackson's final claim alleged that the prison officials frustrated his efforts to file and appeal grievances.

**A. Excessive Force Claims**

Plaintiff's excessive force claims stem from a June 26, 2010, cell extraction; a September 29, 2010, recreation yard incident; and an October 18, 2010, recreation yard incident. All incidents were videotaped. On June 26, 2010, a cell extraction team was assembled to respond to an incident occurring in Jackson's cell. (Doc. 88, Def.'s SOF, ¶ 57; Doc. 89, Def.'s Appendix, Video). When the extraction team arrived, they were confronted with Jackson's mattress

barricaded against the cell door. (Id. at ¶ 58; Video). The extraction team gave Jackson repeated instructions to comply with their commands so that they could remove him from his cell, but Jackson refused all commands. (Id). Consequently, as a first step in the graduated force process, the team discharged OC spray into Jackson's cell. A second application was used when the first had no effect on Jackson. (Id).

Despite these efforts, Jackson still refused to comply with the extraction team's orders. The extraction team thus entered Jackson's cell, led by a staff member holding an EBID shield, which protects officers from injury. (Id. at ¶¶ 60-61; Video). The video depicts the extraction team putting the EBID shield to the side once Jackson was taken to the cell floor and restrained. (Video). Finally, when asked whether he had any injuries, Jackson replied that he did not. (Doc. 88, Def.'s SOF ¶ 62; Doc. 89, Def.'s Appendix, Video).

The next complained of incident occurred on September 29, 2010, when Jackson failed to voluntarily leave the outdoor recreation pen at the prison. He was sprayed once with the OC spray in an effort to have him comply with prison staff. (Id. at ¶¶ 68-75; Video). Jackson eventually complied. Jackson has withdrawn his claim for this incident and raises no objection to the same in the R&R. (Id. at ¶ 70; Doc. 103, Pltf.'s Objection to R&R).

Finally, Jackson's last excessive force claim involves an incident that occurred on October 18, 2010. Again, Jackson refused to voluntarily leave the outdoor recreation pen. Rather, Jackson covered his head with his coat and knelt in the back end of the enclosed yard. (Video). The video of this incident shows Lieutenant Dunkle making repeated requests for Jackson to voluntarily exit the recreation area, without success. (Id). A single use of OC spray was then discharged that had no affect on Jackson. (Id). Lieutenant Dunkle again attempted to

persuade Jackson to leave the yard. (Id). These efforts were again ignored by Jackson. (Id). A second dose of OC spray was discharged, and after a few minutes, Jackson rose and came to the cell door to submit to handcuffing. (Id). Jackson was then instructed by Lieutenant Dunkle to remove his OC saturated jumpsuit and shoes. (Doc. 88, Def.'s SOF ¶ 80-88; Doc. 89, Def.'s Appendix, Video). Jackson also briefly removed his t-shirt until he was instructed to put it back on. (Id). Jackson was escorted back inside wearing a t-shirt, boxers and socks, where he was stripped and searched, received a medical examination, and was provided new clothing and footwear. (Video).

**B. Interruption of Meal Service**

Jackson alleges that he was denied breakfast and lunch for four days: October 28, 2010 through November 2, 2010. (Doc. 19, Amended Complaint ¶ 58). Jackson did receive some meals, mainly dinners, on these four days. (Doc. 88, Def.'s SOF ¶ 92). The record further reflects that on two of these days, Jackson refused lunch. (Id. at ¶ 93; Doc. 89, Def.'s Appendix at T).

**C. Failure to Protect**

The Magistrate Judge sets forth the pertinent facts of this claim within the R&R. We will not further expound on the same, given that Jackson makes no discernable objection to this portion of the R&R.

**D. Grievance Exhaustion**

Lastly, Jackson complains that the prison officials frustrated his efforts in filing and appealing his grievances. (Doc. 19, Amended Complaint ¶ 49). Defendants deny the same and argue that Jackson cannot maintain a due process claim based upon the prison grievance

processes, and further, that Jackson failed to exhaust his remedies which now bar him from pursuing any of his asserted claims. (Doc. 87, Def.'s Br. at 6-9).

### III. STANDARD OF REVIEW

When objections are filed to a Report and Recommendation of a Magistrate Judge, we must make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636(b)(1); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In doing so, we may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); Local Rule 72.31. Although our review is *de novo*, we are permitted to rely upon the Magistrate Judge's proposed recommendations to the extent we, in the exercise of sound discretion, deem proper. See United States v. Raddatz, 447 U.S. 667, 676 (1980); see also Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if there is sufficient evidence with which a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing Anderson, 477 U.S. at 248). A factual dispute is "material" if it might affect the outcome of the case. Id. In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the non-moving party. Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d Cir. 2001); White v. Westinghouse Elec, Co., 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the non-movant's allegations as true and resolve any conflicts in his

favor. Id. (quoting Gans v. Mundy, 762 F.2d 338, 340 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985)); Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977).

## IV. DISCUSSION

Plaintiff has set forth four objections to the Magistrate Judge's R&R. Jackson's first objection is to the excessive force portion of the R&R. His second objection is raised against his interruption of meal service claim. Jackson's third objection is based on a due process claim as it relates to the interference with his grievances. Finally, Jackson's final objection to the R&R is that he can maintain his *respondeat superior* liability claims. We address each in turn.

### A. **Excessive Force Claims**

The Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified." Brooks v. Kyler, 204 F.3d 102, 105 (3d Cir. 2000). The test for whether one has an excessive force claim is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). In making this determination, inferences can be drawn by evaluating a number of factors: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." Id. (citing Whitley, 475 U.S. at 321); see also Brooks, 204 F.3d at 102. The United

States Supreme Court has stated:

> [W]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."

Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson, 503 U.S. at 9). Additionally, *de minimis* uses of physical force do not qualify as excessive force unless the force is "repugnant to the conscience of mankind." Brooks v. Kyler, 204 F.3d 102, 107 (citing Hudson, 503 U.S. at 6); see generally Wilkins, 559 U.S. 34 (2010) (clarifying that *de minimis* force is the dispositive issue, not *de minimis* injury). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. 9.

The Court examines the factors listed above to resolve the "core judicial inquiry" of "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. Defendants, the moving party, assert that reasonable force was used in order to subdue a recalcitrant Jackson during the June 26, 2010, cell extraction, and the September 29 and October 18, 2010, recreation yard incidents. In response, Plaintiff asserts that the Defendants' use of force was excessive and used maliciously or sadistically to cause him harm. He further argues that as a result of the June 26 cell extraction, he sustained bruising to his ribs.

In examining these above factors, we utilize the aid of the videotape which captured the events of which Jackson now complains. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a

court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). When a party's "version of events is so utterly discredited by the record that no reasonable jury could have believed him," the court should not rely "on such visible fiction; it should [view] the facts in the light depicted by the videotape." Id.

Before applying the above factors, we note that because Jackson has withdrawn his claim surrounding the September 29, 2010, recreation yard incident, and because he raises no objection to the same, we will not address it. Now, turning to the June 26 and October 18, 2010 incidents, we first consider the need for the application of force. It is the duty of the Defendants as correctional officers to maintain and restore discipline within the prison. The videotape clearly shows that the Defendants were met with an individual who was defiantly refusing to comply with the Defendants' numerous orders. Confronted with a recalcitrant prisoner, Defendants afforded Jackson numerous opportunities to comply to avoid any physical confrontations. These efforts by Defendants failed on both occasions as Jackson remained noncompliant. Having failed to heed the verbal commands, Defendants then, in a measured and graduated fashion, administered OC spray. While the OC application effectively got Jackson to comply with the Defendants' orders on October 19, it did not have the same effect during the June 26 cell extraction. Graduated and measured physical force was required in order to restrain Jackson and bring him into compliance. The video shows that the force ceases once Jackson is restrained.

Second, the Court must consider the relationship between the need and the amount of force used. The video of the June 26 and October 18 events show Defendants using a measured and graduated application of force after Jackson refused to comply with Defendants' orders.

Because the OC spray had no affect on Jackson, Defendants were forced to physically restrain Jackson during the June 26, 2010, incident. See Soto v. Dickey, 744 F.2d 1260, 1270 (4th Cir. 1984) ("The use of mace, tear gas or other chemical agent of the like nature when reasonably necessary ... to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment," even if the inmate is handcuffed). The video capturing the June 26, 2010, incident shows Defendants rush into the cell after removing the mattress Jackson had barricaded against the cell door, and putting him to the ground and placing him in restraints. After reviewing the video, we find there is no dispute of fact that the force used was proportionate to the need.

Third, the Court must consider the extent of the injury inflicted. As the United States Supreme Court noted in Hudson, a significant or serious injury is not required for an excessive force claim, but it is a factor to consider. Here, Plaintiff claims that he suffered bruising to his ribs as a result of Defendants "repeatedly" tasering him while he was on the ground, handcuffed, and "cooperating" with Defendants during the June 26, 2010, incident. Plaintiff submitted relevant medical records that showed on the X-Ray Request, the reason for the requested exam was for pain and bruising. (Doc. 97, Pltf.'s Br. In Opp., Ex. L). Defendants argue that Plaintiff received prompt medical care immediately after the incident and even denied any injury.

Fourth, the Court must consider the "extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them." Giles, 571 F.3d at 326. Staff members were responding to Jackson's refusal to obey direct orders during each incident. The staff members were confronted with an apparent threat to the safety of staff, other inmates, and the penological interests of the institution, when Jackson blocked his cell window, which prohibited staff members from seeing what he was doing, and refused to

9

comply with staff members' direct orders to voluntarily submit to handcuffing. Therefore, based on the facts known to the staff members at the time of the incidents, there is no dispute of material fact that a safety and penological threat was reasonably perceived by the staff members.

Fifth, the Court must consider any efforts made to temper the severity of a forceful response. Again, the video shows that during the June 26 and October 18, 2010 incidents, Defendants repeatedly ordered Jackson to voluntarily submit to being handcuffed before administering a minimum amount of OC spray in an effort to get him to comply. Because the OC spray was ineffective at getting Jackson to comply during any of the incidents, the Defendants were forced to utilize physical force to restrain Jackson during the June 26, 2010 cell extraction. Again, the video shows Defendants running into the cell, taking Plaintiff to the floor and placing restraints on him. The OC spray was enough to get Jackson to finally comply during the October 18, 2010 incident. As seen from the video, there is no dispute of material fact that Defendants tempered the severity of the force used to control Jackson by first administering a minimum amount of OC spray and then appropriate physical force to restrain and control him during the June 26, 2010, cell extraction.

Weighing the above factors and viewing the facts in the light most favorable to the Plaintiff, we find that the force applied by Defendants in each incident was done in good faith, and in an effort to maintain and restore discipline. There is no evidence that Defendants acted maliciously or sadistically to cause Plaintiff harm.

Finally, the video documenting the yard extraction on October 18, 2010, shows Jackson being ordered to remove his shoes and some of his clothing after being sprayed with OC. Jackson was escorted back inside by officers and staff, one of which was wearing a short sleeved

shirt. We do not find that the officers' order to discard the OC doused clothes outside, was done maliciously or sadistically to cause Plaintiff harm. He was outside in his socks, boxers, and shirt only for a brief time and the video evidence clearly refutes that it was freezing, as he was accompanied back inside by a staff member wearing a short sleeve shirt.

The Magistrate Judge provides that even if Jackson stated a constitutional claim as to the excessive force claims, that Defendants would be entitled to qualified immunity. Jackson disagrees. Qualified immunity protects "government officials performing discretionary functions, including police officers, 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether a government official is entitled to qualified immunity, the court undergoes a two-step inquiry and uses its discretion as to what order the two steps are considered. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). The two steps are: (1) whether the facts shown by the plaintiff demonstrate that the government official's conduct violated a constitutional right; and (2) whether the right was "clearly established" at the time of the alleged misconduct. Pearson, 555 U.S. at 815-16. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001).

Upon review of the record, including the video, which clearly captured the events of which Jackson bases his claims of excessive force, we find that Defendants are entitled to qualified immunity. Reasonable officers would have believed that the graduated and measured

11

use of OC spray and then physical force in the cell extraction to restrain a recalcitrant inmate, was completely reasonable and lawful. As such, Defendants are entitled to qualified immunity as to the excessive force claims.

**B. Interruption of Meal Service**

Jackson argues that he was denied breakfast and lunch for four days: October 28, 2010 through November 2, 2010. While the Constitution "does not mandate comfortable prisons," the Eighth Amendment "imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care...." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal citations omitted). Only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim. Lindsey v. O'Connor, 327 F. App'x 319, 321 (3d Cir. 2009); Feliciano v. Burset, 2010 WL 4922700, at *17 (D.P.R. Dec. 2, 2010) (only a "systematic failure to provide food in sufficient quantity to maintain normal health violates the Eighth Amendment"); Gonzales v. Martinez, 892 F.2d 1046 (9 Cir. 1990) (inmate denied breakfast and lunch for three-week period but fed adequate dinner did not rise to Eighth Amendment claim); Adderly v. Ferrier, 2010 WL 2636109, at *4 (W.D. Pa. June 29, 2010) (one meal per day for seven days does not offend the Constitution).

The record reflects that Jackson was provided dinner on these four days and Jackson does not deny this fact. Nor does Jackson argue that these dinners were nutritionally inadequate to maintain his health. Moreover, the record shows that while Jackson argues he was denied breakfast and lunch on these four days, it was Jackson who refused lunch on two of these occasions. Nevertheless, because Jackson was provided a nutritionally adequate meal each of

these days, he cannot maintain a viable Eighth Amendment claim.

## C. Grievance System

Plaintiff objects to the Magistrate Judge's finding that he failed to exhaust his DOC administrative remedies with respect to his Eighth Amendment claims, as required by the Prison Litigation Reform Act ("PLRA"). Defendants respond by arguing that Plaintiff did not exhaust his administrative remedies and moreover, that Plaintiff does not have a constitutional right to a prison grievance system.

Prisoners do not have a constitutional right to an effective prison grievance process. Speight v. Sims, 283 F. App'x 880 (3d Cir. 2008). Further, "access to a grievance procedure is not a constitutional right." Romero v. Johnson, 2015 WL 1285885, at *4 (M.D. Pa. March 20, 2015); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (the "existence of a prison grievance procedure confers no liberty interest on a prisoner").

Additionally, a prisoner must exhaust all "available" administrative remedies prior to initiating a Section 1983 action. 42 U.S.C. § 1997(e). Exhaustion must be done properly, meaning an inmate must follow procedural rules, including deadlines, so the merits of the grievance are considered. See Woodford v. Ngo, 548 U.S. 81, 90 (2006).

Failure to exhaust is an affirmative defense that must be pled by the defendant. Jones v. Bock, 549 U.S. 199, 216 (2007). "In a motion for summary judgment, where the movants have the burden of proof at trial, 'they [have] the burden of supporting their motion for summary judgment with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" Foster v. Morris, 208 F. App'x 174, 179 (3d Cir. 2006) (quoting In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (internal quotations omitted)). If "the motion does

not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." Id. (quoting Nat'l State Bank v. Fed. Reserve Bank of N.Y., 979 F.2d 1579, 1582 (3d Cir. 1992) (internal quotations omitted)).

Defendants raised the exhaustion defense in their waiver of reply to Plaintiff's amended complaint. Since Defendants have the burden of proof on the issue of exhaustion and they are the moving party on the motion for summary judgment, Defendants must show that they would be entitled to a directed verdict on the issue of exhaustion.

Upon reviewing the record, we are in agreement with the Magistrate Judge. While Jackson cannot maintain a cognizable claim in regards to the grievance system, there remains factual issues in dispute with regards to the exhaustion defense. As such, we will remand any unresolved exhaustion issues to the Magistrate Judge to conduct a plenary evidentiary hearing.

### D. *Respondeat Superior* Liability

As noted above, there remain nineteen Defendants in the pending action. However, Plaintiff only alleges that a certain number of these Defendants actually participated in the remaining six claims. Plaintiff argues that while many of these remaining Defendants may not have personally participated or have been personally involved in the remaining claims, he argues that they all personally knew of and acknowledged what was taking place, and are therefore liable as supervisors.

Personal involvement in the alleged wrongdoing is necessary for the imposition of liability in a civil rights action. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005); Sutton v. Rasheed, 323 F.3d 236, 249-50 (3d Cir. 2003). Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); Rode v. Dellarciprete, 845 F.2d

1195, 1207 (3d Cir. 1988). Individual liability can only be imposed if the state actor played an "affirmative part" in the alleged misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). A supervisory defendant may be liable if he directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. Rode, 845 F.2d at 1207-08. Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. at 1208, quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991).

Additionally, participation in the after-the-fact review of a grievance is not enough to establish personal involvement. See, e.g. Rode, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006)(per curiam)(allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation); Burnside v. Moser, 138 F. App'x 4114, 416 (3d Cir. 2005)(per curiam)(failure of prison official to process administrative grievance did not amount to a constitutional violation or personal involvement in the alleged constitutional deprivation grieved). It has also been found that simply alleging that an official failed to respond to a letter or request Plaintiff may have sent raising complaints, is not enough to demonstrate they had requisite personal involvement. See Rivera v. Fischer, 655 F. Supp. 2d 235 (W.D.N.Y. 2009)(finding that many courts have held that merely writing a letter of complaint does not provide personal involvement necessary to maintain a § 1983 claim).

Upon review of the record, we are in agreement with the Magistrate Judge: Jackson's general allegations against the supervisory Defendants, alleging failure to establish policies and administer policies with respect to virtually every issue Jackson raises in the complaint is insufficient to state a claim for relief with respect to Defendants.  As such, Defendants Beard, Smeal, Lawler, Eckard, Green, Wakefield, Semple, Williams, Pyle, Long, McClosky, McCoy, Clark, Shroyer, and Dunkle will be dismissed from this action.

Thus, summary judgment as to Defendants Cates, Spellman, Stevens, and Donaldson will be denied, without prejudice, on Jackson's failure to protect claim, and remanded back to the Magistrate Judge for purposes of conducting an evidentiary hearing on Defendants' PLRA exhaustion claims, resolution of pending factual disputes with respect to those claims, and the submission of a Report and Recommendation on a complete factual record.

## V. Conclusion

For the reasons set forth above, we will adopt the Magistrate Judge's recommendation (Doc. 102).  The Court has given reasoned consideration to the portions of the Report to which there are no objections, and we agree with the Magistrate Judge's recommendations.  An appropriate order is attached.