IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RHONSHAWN JACKSON,  :
          :
  Plaintiff    :  Civil No. 3:11-CV-1431
          :
v.         :  (Judge Kosik)
          :
JEFFREY BEARD, et al.,  :  (Magistrate Judge Carlson)
          :
  Defendants  :

## REPORT AND RECOMMENDATION

### I. Introduction

For putative prisoner-plaintiffs in federal court the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), (PLRA) imposes important threshold obligations upon litigants.  In part, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

The PLRA also imposes responsibilities upon federal courts when addressing inmate lawsuits.  Specifically, the PLRA has been interpreted to impose upon the court the responsibility to determine whether an inmate has exhausted his administrative remedies prior to the filing of a complaint, even if that determination requires the resolution of disputed facts.  See Small v. Camden Cnty., 728 F.3d 265, 271 (3d Cir.

2013) (judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury).

In this case we are called upon to perform this duty, imposed upon us by the PLRA, and ascertain whether the inmate-plaintiff, Rhonshawn Jackson, has fulfilled his own responsibility under the PLRA to fully and properly exhaust his administrative remedies prior to filing this lawsuit. Having conducted an evidentiary hearing for the purpose of determining whether Jackson has exhausted these administrative remedies, for the reasons set forth below we conclude that he did not fully exhaust these remedies prior to filing this lawsuit. Therefore, we recommend that Jackson's case be dismissed.

## II.   **Statement of Facts and of the Case**

### A.   **Procedural History**

This longstanding case involves various allegations by the plaintiff, Rhonshawn Jackson, a state inmate, that he was mistreated by prison staff at the State Correctional Institution (SCI) Huntingdon following his transfer to that institution after Jackson had assaulted guards at another state prison. Over the past five years, through the litigation process the claims in this case have been narrowed to a single surviving claim.

Specifically, Jackson's complaint sets forth an Eighth Amendment a failure to protect claim which Jackson brings against defendants Cates, Stevens, Lawler, Eckard, Spellman and Donaldson. (Doc. 19, ¶43.) With respect to this claim, Jackson recites that on or about November 27, 2010, defendant Cates wrote the word "snitch" and racial epithets on Jackson's legal materials. Jackson further contends that, following this incident, during a five day period from November 28 through December 2, 2010, Cates, Spellman, Stevens and Donaldson, then "communicated said slander [that Jackson was an informant] to highly dangerous prisoners who, in turn, threatened, ridiculed, humiliated and assaulted plaintiff." (Id.)

With respect to this last remaining claim, on summary judgment Jackson and the defendants advanced two competing and contrasting positions relating to Jackson's exhaustion of administrative grievances within the prison system relating to this incident. For his part, Jackson asserted that prison officials frustrated his efforts to file and appeal grievances, and brought these allegations as a free-standing denial of due process claim. (Doc. 19, ¶65.) In contrast, the defendants denied this allegation, argued that inmates may not base a due process claim upon prison grievance processes, and further asserted that Jackson's failure to exhaust these remedies now bars him from pursuing any of the legal claims set forth in this complaint.

Upon consideration of these contrasting positions set forth in the defense summary judgment motion, we recommended a third path. In our view, an inmate could not sustain a constitutional due process tort claim against prison officials based solely upon their alleged mishandling of his grievances. Inmates do not have a constitutional right to a prison grievance system. Speight v. Sims, 283 F. App'x 880 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with the processing of an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). Yet, while these allegations by Jackson of interference with his right to lodge grievances did not support a free-standing due process claim, we found that they could defeat the defendants' motion for summary judgment to the extent that this motion relies upon an alleged failure to fully exhaust

prison grievances.  In this case, while Jackson's allegations regarding systematic interference with his grievances did not state a free-standing legal claim, it did present a factual dispute which precluded assertion of an exhaustion defense as a matter of law on summary judgment.  Instead, we recommended that the Court remand this matter to the undersigned for the purpose of scheduling a hearing, resolution of factual disputes, and preparation of a Report and Recommendation on this affirmative defense.  We made this recommendation mindful of the fact that this affirmative defense should be resolved by the Court as a matter of law, even if that resolution involves further development of the factual record and an evidentiary hearing.

The district court adopted this recommendation and remanded the exhaustion issue to the undersigned for further development of the factual record on this claim. (Doc. 106.)  We then took a series of steps designed to allow all parties a full and fair opportunity to address this legal question on a full factual record.  Thus, we provided all parties with one month's notice of a scheduled hearing on this exhaustion issue. (Doc. 107.)  We also provided the parties with an opportunity to make pre-hearing submissions, (id.), as well as affording the parties leave to make post-hearing submissions and arguments.  (Doc. 119.)  The parties have taken full advantage of these opportunities, conducting an evidentiary hearing, providing exhibits to the

Court, and making legal arguments related to this exhaustion issue.  (Docs. 111-18, 120-127.)

For his part, Jackson's approach to the litigation of this issue has, on occasion, been chaotic and erratic.  Thus, Jackson has at times argued that the Court has already ruled in his favor on this question as a matter of law, something which is plainly not correct.  Jackson has also made shifting, eleventh hour requests to produce witnesses, although his offers of proof in support of these witnesses have been deficient and the proffered testimony of the witnesses have been contradicted by documentary evidence. Furthermore, some of Jackson's requests have entailed the movement of dangerous inmates whose proffered testimony would have limited evidentiary value to county jails, a course of action which raises significant security concerns.  Accordingly, we have concluded that further factual development of this record as proposed by Jackson is neither necessary, nor appropriate, and we deny Jackson's motions to further supplement the record.  (Docs. 113 and 120.)

Having afforded the parties these opportunities to completely address the exhaustion issues in this case, we make the following findings of fact relating to whether Jackson has fully and properly exhausted his administrative remedies with respect to the remaining claims in this litigation.

### B.   Findings of Fact Related to Exhaustion of Remedies

With respect to the issue of exhaustion of administrative remedies by Rhonshawn Jackson, we find that the following facts have been established by the parties:  At all times pertinent to this litigation, the Department of Corrections maintained a general grievance system, DC-ADM 804, that offered a three-phase grievance and appeals procedure. (Doc. 1117 Ex. A, DC-ADM 804.) Pursuant to DC-ADM 804, inmates first file grievances with the Facility Grievance Coordinator at the facility where the events upon which the complaint is based occurred.  If the inmate is unsatisfied with the initial review of his grievance, he may appeal the decision to the Facility Manager (Superintendent).   Upon receiving a decision from the Superintendent, the inmate may file an appeal with the Secretary's Office of Inmate Grievances and Appeals (SOIGA) within 15 days of the Superintendent's decision. (Id.)   The DC-ADM 804 grievance process was implemented as a policy that articulated a formal grievance procedure, a "forum for review," and an avenue of appeal.  The DC-ADM 804 system was instituted to ensure that inmates had a general avenue to resolve specific problems, and provided that this administrative avenue consisted of an initial review and then two tiers of appellate review, imposing different levels of responsibilities on the inmates during each stage of the administrative process.  In order to exhaust administrative remedies in accordance with this three-step

–7–

process prescribed by DC–ADM 804, inmates must file grievances and appeals in the place, time, and manner that the DOC's administrative rules require.  (Id., DC-ADM 804.)

Rhonshawn Jackson was fully familiar with the Department of Corrections three-tier grievance process, having been a frequent, albeit frequently unsuccessful, grievant in the past.  Indeed, in less than two years, between April 2009 and January 2011, Jackson had filed no less than 25 grievances pursuant to DC-ADM 804 with prison officials.  While this extensive grievance history illustrates Jackson's complete familiarity with the grievance process, this past history is also telling in another respect.  Jackson's past grievance history revealed that this prisoner routinely ignored, and failed to comply with grievance procedures, and regularly did not follow up on grievances which he submitted.  (Id.)  Indeed, only a handful of the 25 grievances submitted by Jackson were ever fully and properly exhausted by the plaintiff.  Thus, it is against the backdrop of this grievance history, a history which reveals significant experience with the grievance process coupled with a persistent refusal to follow that process, that we evaluate the exhaustion issues relating to Jackson's failure to protect claim.

Jackson's sole remaining claim in this case is an Eighth Amendment a failure to protect claim which Jackson brings against defendants Cates, Stevens, Lawler,

Eckard, Spellman and Donaldson.  (Doc. 19, ¶43.)  Jackson alleges that on or about November 27, 2010, defendant Cates wrote the word "snitch" and racial epithets on Jackson's legal materials, and further contends that, following this incident, during a five day period from November 28 through December 2, 2010, Cates, Spellman, Stevens and Donaldson, then "communicated said slander [that Jackson was an informant] to highly dangerous prisoners who, in turn, threatened, ridiculed, humiliated and assaulted plaintiff."  (Id.)

With respect to whether Jackson ever fully and properly exhausted his administrative remedies with regard to this claim, the evidence reveals that Jackson was held in two separate housing units at SCI Huntingdon during the period in which this incident is alleged to have occurred and Jackson would have had an obligation to submit a grievance, Buildings D and G.  As we understand it, Jackson was initially held in Building G, A block, from November 27, 2010, to December 1, 2010, but was later transferred to a much smaller housing unit in Building D, B block on December 1, 2010.

Jackson has suggested that at this time inmates in these two housing units were systematically denied access to the institutional grievance process in December of 2010, but the documentary evidence thoroughly disproves this claim.  Indeed, between November 28 and December 31, 2010, inmates in Building G submitted approximately

116 grievances to prison officials. (Doc. 117, Ex. FF.)  In the same period prisoners held in what was described as the much smaller housing unit, Building D, submitted 9 grievances to correctional staff. (Id., Ex. EE.)  Thus, a total of 125 grievances were filed by inmates from these housing units in the one month period in December 2010 when Jackson suggests that inmates were denied access to the grievance system.  Far from demonstrating a denial of access to grievances, these institutional records strongly suggest that inmates had full, untrammeled access to the grievance process at this time at SCI Huntingdon.

Indeed, the undisputed evidence shows that Jackson himself submitted grievances on various matters to prison officials, both while housed in Building G, and later when he was held in Building D. (Id., Exs. EE and FF.)  The fact that Jackson actually pursued grievances from both of these housing units during the latter part of 2010 contradicts any claim that the plaintiff's efforts to grieve matters were systematically impeded by staff.  In particular, we note that the fact that Jackson actually submitted a grievance to prison officials from Building D Block B, (Id., Ex. EE), rebuts any allegation by Jackson that there was a wholesale denial of grievance materials in that housing unit.  Instead, it supports an inference that, while in Building D Block B, Jackson chose to grieve some matters, but not the failure to protect issue which lies at the heart of the remaining claim in this lawsuit.

Nor can Jackson credibly assert that prison staff were denying inmates access to the grievance process based upon the subject matter of their grievances. Quite the contrary, a review of prison records reveals that the grievances submitted by Jackson, but not properly exhausted by this inmate in late 2010, were identical to those submitted by other inmates, and related to cell assignments and allegations of staff harassment. (Id., Ex. EE and FF). Indeed, at least nine of these 125 grievances are described in terms identical to those used to describe Jackson's complaints, and dozens of additional grievances are couched in terms very similar to those used to describe Jackson's grievances. (Id.)

Furthermore, in his opposition to this exhaustion defense Jackson has at various times proffered different inmates as potential witnesses to systematic denial of access to the grievance system. Jackson's efforts on this score have shifted over time with the plaintiff identifying different inmates at different times, but one consistent theme can be found in all of these claims. Prison records consistently reveal that the inmates that Jackson suggests could confirm the systematic denial of grievance access all actively used the grievance process during late 2010 to file multiple grievances. (Docs. 117, 123, Grievance records of inmates Jacobs, Mohamed, Ignudo, Johnson and Hallman.) Thus, far from confirming the denial of access to the grievance

process, the experience of these proffered inmates shows that each of these prisoners had a full opportunity to lodge grievances while housed at SCI Huntingdon.

Finally, our review of the actual grievances submitted by Jackson while housed at SCI Huntingdon between November 2010 and January 2011, contradicts his claim of denial of access to the grievance process.  During this period Jackson submitted three grievances, one from Building G and two, redundant grievances while housed in Building D.  (Doc. 117 Exs. W and X., Doc. 123, Ex. NN.)  The first of these grievances, Grievance Number 344427, was submitted by Jackson on November 27, 2010.  While this grievance alleged, in part, that prison staff had written epithets on Jackson's legal materials on or about November 27, 2010, this grievance cannot be seen as fully and properly exhausting Jackson's failure to protect claim for at least two reasons.

First, the grievance was submitted on November 27, 2010, *prior* to the alleged failure to protect, which occurred sometime between November 28 and December 2, 2010, according to Jackson.  Plainly, Jackson cannot point to a grievance lodged *before* the events at issue in this lawsuit to satisfy this exhaustion requirement.

In any event, Jackson did not fully and properly grieve this issue, in accordance with AD-DCM 804.  While it appears that Jackson completed the first two steps in this grievance process, it is also evident that Jackson did not satisfy the last step in the

process by submitting a timely final grievance to SOIGA.  This failure to fully complete the grievance process was consistent with Jackson's longstanding grievance history, which is marked by multiple grievances which were never fully exhausted, and simply does not meet the requirements of the PLRA.

While Jackson did not fully exhaust this grievance, the grievance paperwork reveals that, far from impeding his grievance access, prison officials actually went out of their way to assist and accommodate Jackson.  Thus, when Jackson lacked some paperwork needed to perfect a grievance, he requested that material from a prison staff member, Connie Green, who provided the requested documents to the plaintiff. (Doc. 117. Ex. X.)

Jackson's second grievance, Grievance Number 345447, further undermines his argument that he was denied access to the grievance process.  (Doc. 123, EX. NN.) This second grievance was dated December 1, 2010, and was pursued by Jackson while he was housed in D Building B Block.  Although the grievance would have been prepared by Jackson at the very time he alleges that prison staff were failing to protect him, it does not alert prison officials to this claim.  Instead, in this grievance Jackson protests the loss of some property, and complains that he has been transferred to Building D "So I can be tortured and killed" by staff.  (Id.)  This grievance was addressed by staff, and the prison superintendent, but Jackson never pursued a final

appeal of this grievance to SOIGA.  (Id.)  Thus, this second grievance was also not

fully and properly exhausted.[1]

It is against this factual background that we assess the failure to exhaust defense

raised in this case.  On these facts, for the reasons set forth below, we find that the

defendants have met their burden of proof on this affirmative defense, and recommend

that Jackson's complaint be dismissed due to his failure to exhaust his administrative

remedies.

### III.   Discussion

### A.   PLRA Exhaustion Requirements

The defendants urge the Court to dismiss Jackson's complaint because the

plaintiff has failed to fully exhaust the administrative remedies available to him under

the prison's formal grievance policy.  In this case Jackson's alleged failure to timely

pursue these administrative remedies may have substantive significance for the

plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be

---

[1]It appears that Jackson also submitted another, related grievance concerning his personal property on December 8, 2010, Grievance Number 34566. This grievance relates solely to lost property issues, and contains no failure to protect claim, a curious omission since Jackson alleges that he was in the throes of this episode at the time he submitted the grievance.  This grievance was rejected as duplicative of Jackson's prior grievance, and was never fully exhausted by Jackson.  (Id.)  Therefore this redundant, factually unrelated and completely unexhausted grievance adds nothing to Jackson's claim of administrative exhaustion of prison remedies.

brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility

until such administrative remedies as are available are exhausted."   42 U.S.C. §

1997e(a).  Section 1997e's exhaustion requirement applies to a wide-range of inmate

complaints, including damages claims like those made here grounded in alleged

violations of the Eighth Amendment.  See Spruill v. Gillis, 372 F.3d 218 (3d Cir.

2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000).   While this exhaustion

requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced

by the courts.  This rigorous enforcement is mandated by a fundamental recognition

that § 1997e's exhaustion requirement promotes important public policies.  As the

United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of
> exhaustion requirements.   They include (1) avoiding premature
> interruption of the administrative process and giving the agency a chance
> to discover and correct its own errors; (2) conserving scarce judicial
> resources, since the complaining party may be successful in vindicating
> his rights in the administrative process and the courts may never have to
> intervene; and (3) improving the efficacy of the administrative process.
> Each of these policies, which Congress seems to have had in mind in
> enacting the PLRA, is advanced by the across-the-board, mandatory
> exhaustion requirement in § 1997e(a). ... [A] a comprehensive exhaustion
> requirement better serves the policy of granting an agency the
> "opportunity to correct its own mistakes with respect to the programs it
> administers before it is haled into federal court."  Moreover, "even if the
> complaining prisoner seeks only money damages, the prisoner may be
> successful in having the [prison] halt the infringing practice" or fashion
> some other remedy, such as returning personal property, reforming

personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards.  And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages.  In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring.  An across-the-board exhaustion requirement also promotes judicial efficiency. . . .  Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. . . .  In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained.  The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures.  All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement.  Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court.

"Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff."  Small v. Camden Cnty., 728 F.3d 265, 268-69 (3d Cir. 2013).  In accordance with the PLRA, in order to prevail on this affirmative defense a defendant must show that the prisoner failed to comply with exhaustion requirements with respect to any claim that arises in the

prison setting, regardless of the type of claim asserted, or the relief sought.  See Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").   As the statute's language makes clear, the exhaustion of available administrative remedies prior to filing suit is mandatory.  See Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court – or any other – to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.") (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)).

Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts.  See Small v. Camden Cnty., 728 F.3d 265, 271 (3d Cir. 2013) (judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010).  Where this process entails fact-finding and resolution of factual disputes, the

court may resolve the issue of exhaustion through an evidentiary hearing.  As the court

of appeals has observed:

> [J]ust as subject-matter jurisdiction, personal jurisdiction, and venue,
> exhaustion is a "threshold issue that *courts* must address to determine
> whether litigation is being conducted in the right forum at the right time."
> Dillon, 596 F.3d at 272 (emphasis added); see Pavey, 544 F.3d at 741
> ("Juries decide cases, not issues of judicial traffic control.  Until the issue
> of exhaustion is resolved, the court cannot know whether it is to decide
> the case or the prison authorities are to."); cf. McCarthy v. Madigan, 503
> U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (likening the
> doctrine of exhaustion of administrative remedies to "abstention, finality,
> and ripeness-that govern the timing of federal-court decisionmaking");
> Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51 n. 9, 58
> S.Ct. 459, 82 L.Ed. 638 (1938) (describing exhaustion as a "rule of
> judicial administration"). . . . . [I]t is of no consequence that here, as is
> often the case, there are disputed facts that must be resolved in order to
> determine whether the claims were exhausted.  See Bryant, 530 F.3d at
> 1373–74 (holding the district court properly acted as fact finder in
> resolving conflicting evidence that raised a genuine issue of material fact
> about whether administrative remedies were available to the prisoner
> plaintiffs); accord Messa, 652 F.3d at 309; Dillon, 596 F.3d at 271.
> Matters of judicial administration often require judges to decide factual
> disputes and the Seventh Amendment is not implicated as long as the
> facts are not bound up with the merits of the underlying dispute.

Small v. Camden Cnty., 728 F.3d 265, 269-70 (3d Cir. 2013)

Moreover, when assessing an exhaustion claim, it is important to note that the

exhaustion requirement of the PLRA is one of "proper exhaustion."  Woodford v. Ngo,

548 U.S. 81, 84 (2006).  Failure to comply with the procedural requirements of the

available grievance system will result in a claim being deemed procedurally defaulted.

Nyhuis v. Reno, 204 F.3d 65, 90 (3d Cir. 2000); Spruill v. Gillis, 372 F.3d 218, 227-

32 (3d Cir. 2004).  An inmate cannot circumvent the PLRA's exhaustion requirement by failing to properly exhaust the prison's administrative review process, or by waiting until such remedies are no longer available to him.  <u>Woodford</u>, 548 U.S. at 95. However, if an inmate shows that the actions of prison officials directly caused the inmate's procedural default of a grievance, the inmate will not be held to strict compliance with the exhaustion requirement.  <u>Brown v. Croak</u>, 312 F.3d 109, 112-13. Likewise, "[w]here [the inmate] failed to receive even a response to the grievances addressing the . . . incidents, much less a decision as to those grievances, the [administrative remedy] process was unavailable to him." <u>Small v. Camden Cnty.</u>, 728 F.3d 265, 273 (3d Cir. 2013).

Judged against these legal guideposts, for the reasons set forth below, we find that the defendants are entitled to dismissal of the remaining Eighth Amendment failure to protect claim in this action due to Jackson's failure to exhaust his administrative remedies with respect to that claim.

### B.    The Defendants Have Carried Their Burden of Proof on Their Defense of Failure to Exhaust Administrative Remedies

Upon a full consideration of the evidence, we find that the defendants have carried their burden of proof and persuasion demonstrating that Rhonshawn Jackson did not fully and properly exhaust his administrative remedies with respect to the sole remaining claim in this lawsuit, an Eighth Amendment failure to protect claim

stemming from conduct which allegedly took place between November 28 and December 2, 2010.

On this score, we find that by November 2010 Jackson was fully conversant with the administrative requirements of AD-DCM 804 have filed some two dozen grievances in the two years prior to this alleged incident. Further, while it is apparent that Jackson understood these procedures, it is also evident that Jackson persistently refused to follow those procedures, and only fully exhausted a handful of the many grievances which he had filed in the past.

The evidence also discloses that Jackson was held in two separate housing units at SCI Huntingdon during the period in which this incident is alleged to have occurred. Jackson was initially held in Building G, A block, from November 27, 2010, to December 1, 2010, but was later transferred to a much smaller housing unit in Building D, B block on December 1, 2010. While Jackson has suggested that prison staff in these housing units systematically denied inmates access to the grievance process, documentary evidence thoroughly rebuts this claim. Between November 28 and December 31, 2010, inmates in these two buildings submitted approximately 125 grievances to prison officials, averaging more than four grievance submissions each day, a rate of grievance filings which is completely inconsistent with Jackson's claims of a wholesale refusal to permit grievances. In fact, Jackson himself

filed at least three grievances during this period, submitting grievances both while housed in Building G and later while he was held in Building D.  Furthermore, a review of the subject matter of these grievances discloses that many of the grievances submitted by other inmates were identical or substantially similar to the grievances lodged by Jackson, a fact which rebuts any suggestion that staff were discarding grievances based upon the subject matter of those inmate complaints.  Furthermore, while Jackson has proffered that other inmates observed or experienced the same systematic denial of access to grievances at SCI Huntingdon, the facts do not bear out this claim.  Quite the contrary, the evidence shows that the inmates identified by Jackson actually actively used the grievance process at the very time these events were taking place.

Finally, our review of the grievances actually submitted by Jackson during December 2010 reveals that none of these grievances fully and properly exhausted the failure to protect claim that Jackson now brings in this lawsuit.  At the outset, none of these grievances appear to have been fully exhausted through the three-tier process prescribed by AD-DCM 804.  Since the exhaustion requirement of the PLRA is one of "proper exhaustion," Woodford v. Ngo, 548 U.S. 81, 84 (2006), Jackson's failure to completely exhaust these claims is fatal here.  Moreover, a review of the grievances themselves shows that they cannot reasonably be read as a effort to exhaust this

particular legal claim that staff failed to protect him from harm at the hands of other inmates.  Jackson's first grievance was submitted on November 27, 2010, prior to the allegedly failure to protect which Jackson claims took place between November 28 and December 2, 2010.  Since this grievance preceded the events alleged in Jackson's complaint it cannot in any way be construed as an effort to grieve those claims, claims arising out of events which had not yet taken place.

Jackson's subsequent grievances, dated December 1 and December 8, 2010, were submitted within days of this alleged failure to protect the plaintiff, but curiously do not address this issue, the only remaining legal issue in Jackson's current lawsuit. Instead, these grievances spoke to concerns about Jackson's property, as well as a wholly unsubstantiated allegation that Jackson was transferred to Building D  "So I can be tortured and killed" by staff.  Jackson's failure to raise this failure to protect claim at the very time these events were alleged to have occurred casts further doubt upon the plaintiff's exhaustion argument.

In sum, we find that Jackson did not exhaust, or even raise, this failure to protect claim in the three grievances which he submitted in December 2010.  We further find that none of these three grievances was fully and properly exhausted under AD-DCM 804.  In addition, the evidence shows that inmates housed with Jackson were able to submit approximately 125 grievances during the period at question in this case, a rate

of grievance submission which is entirely inconsistent with, and completely contradicts, any claim of systematic obstruction of the grievance process by prison staff at SCI Huntingdon.

Recognizing that the exhaustion requirement of the PLRA is one of "proper exhaustion," Woodford v. Ngo, 548 U.S. 81, 84 (2006), and a failure to comply with the procedural requirements of the available grievance system will result in a claim being deemed procedurally defaulted, Nyhuis v. Reno, 204 F.3d 65, 90 (3d Cir. 2000); Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004), we find on these facts that the defendants have shown that Jackson has not properly exhausted his grievance rights as required by the PLRA. Since "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted," 42 U.S.C. § 1997e(a), on these facts, we further find, and recommend, that the district court conclude that the defendants have carried their burden of showing that Jackson failed to exhaust this claim. Therefore we recommend that this case be dismissed.

## IV.   **Recommendation**

Accordingly, for the foregoing reasons, we have concluded that further factual development of this record as proposed by Jackson is neither necessary, nor

appropriate, and we DENY Jackson's motions to further supplement the record. (Docs. 113 and 120.)   IT IS FURTHER RECOMMENDED that the plaintiff's amended complaint be dismissed pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), due to the plaintiff's failure to fully, timely, and properly exhaust his administrative remedies prior to filing this action, exhaustion that is a legal prerequisite to bringing this lawsuit.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 4th day of October 2016.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge